TATEL, Circuit Judge,
concurring in the judgment:
Although troubled by several aspects of the Deputy Administrator’s decision, I concur in the denial of the petition for review because substantial evidence supports two of her findings, which together constitute sufficient and independent grounds for the sanction of revocation.
Unlike Judge Henderson, I believe that the Deputy Administrator unreasonably construed section 822(e). That section requires a separate registration for “each principal place of business ... where the applicant ... distributes ... list I chemicals.” 21 U.S.C. § 822(e). This provision is hardly unambiguous as to the “precise question at issue,” Chevron U.S.A., Inc. v. Natural Res. Def. Council, 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), i.e., whether the word “principal” can apply to places such as Novelty’s self-storage units. The word “each” prevents “principal” from taking its ordinary meaning of “most important, consequential, or influential: relegating comparable matters, items, or individuals to secondary rank,” WEBSTER’S THIRD NEW INTERNATIONAL DICTIONARY 1802 (1993) (emphasis added). Given this ambiguity, we must accept the Deputy Administrator’s construction if reasonable. See Chevron, 467 U.S. at 843,104 S.Ct. 2778.
Judge Henderson reads the Deputy Administrator as finding that certain characteristics of Novelty’s self-storage units made them sufficiently “consequential” to the company’s operations for the units to constitute principal places of business under section 822(e). Op. at 1183-84. Although I think it quite counterintuitive that anyone would ever describe a self-storage unit as a “principal place of business” for a corporation with hundreds of employees and a nationwide client base, that interpretation might well be defensible as a reasonable exercise of the Deputy Administrator’s authority to interpret an ambiguous provision of the Act. See id. But because it isn’t the interpretation on which the Deputy Administrator actually relied, we may not use it to sustain her action. See, e.g., PDK Labs. Inc. v. DEA 362 F.3d 786, 798 (D.C.Cir.2004) (“[I]f we find that an agency’s stated rationale for its decision is erroneous, we cannot sustain its action on some other basis the agency did not mention.” (citing SEC v. Chenery Corp., 332 U.S. 194, 200, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947))).
Instead of determining that the self-storage units were “consequential” due to their particular status in Novelty’s business structure, see Op. at 1183, the Deputy Administrator determined they were “consequential” (and thus “principal”) simply because they were locations from which Novelty distributed list I chemicals, Novelty Distributors, Inc. (“Final Order”), 73 Fed.Reg. 52,689, 52,700 (Sept. 10, 2008). Making this interpretation quite clear, she stated that section 822(e) “requires that a separate registration be obtained at each location at which List I chemicals are distributed. ” Id. at 52,700 (internal quotation marks and some emphasis omitted); see also id. (explaining DEA’s position that “[t]he person who distributes List I chemicals from independently owned warehouses must register at each location ” (internal quotation marks omitted, alteration in original)).
The Deputy Administrator’s interpretation suffers from a fatal flaw — it makes surplusage of the word “principal.” If all locations where an applicant distributes list I chemicals must be registered, then the phrase “each principal place of business ... where the applicant ... dis *1168 tributes ... list I chemicals” would mean exactly the same thing if the word “principal” disappeared. Although “principal” as used in section 822(e) could have several permissible readings, any reasonable interpretation must impose some limitation not already captured by the term “distributes.” See Dissenting Op. at 1193-94; see also, e.g., Sierra Club v. EPA, 536 F.3d 673, 680 (D.C.Cir.2008) (“It is a court’s duty to give effect, if possible, to every clause and word of a statute.” (internal quotation marks, brackets and ellipsis omitted)).
To be sure, in the course of explaining her interpretation the Deputy Administrator did say at one point that “[a] location where List I chemicals are stored and distributed from, is a principal place of business because it plays a ‘consequential’ part in the registrant’s activity of distributing.” Final Order, 73 Fed.Reg. at 52,-701. Although a requirement that list I chemicals be “stored” at a location could supplement the requirement that they be distributed, the word “stored” instead seems little more than a verbal flourish. After all, it’s mentioned only in passing during the Deputy Administrator’s argument for her expansive interpretation and never makes its way into any narrowing formulation. Clearly, then, as the Deputy Administrator sees it, “each location at which List I chemicals are distributed,” id. at 52,700 (some emphasis omitted), must be registered, not just those locations at which the chemicals are also stored. Given that the word “stored” fails to avoid surplusage, the Deputy Administrator’s interpretation is thus unreasonable under Chevron and cannot support her conclusion that Novelty failed to comply with applicable law.
But this does not end the matter, for the Deputy Administrator placed independent reliance on two findings unrelated to her flawed statutory interpretation. Each finds support in the record, and together they form a sufficient basis for the sanction imposed.
First, the Deputy Administrator found that whether or not section 822(e) required their registration, the self-storage units posed a serious risk of diversion. See 21 U.S.C. § 823(h)(1) (requiring consideration of the registrant’s maintenance of effective controls against diversion). She stated that it was “unlikely” that the units would meet DEA’s security requirements, citing agency precedent finding that the use of similar units posed “an unacceptable risk of diversion.” Final Order, 73 Fed.Reg. at 52,698. She also pointed to several flaws in Novelty’s storage units, such as the fact that the door of one unit was accessible to the public. Id. Finally, she noted that even by the time of her decision Novelty had failed to provide DEA with accurate locations for thirty-four of its storage units. Id. For all of these reasons, the Deputy Administrator concluded that Novelty’s “use of these storage facilities ... does not provide adequate controls against diversion and provides reason alone to support the finding that its continued registration is inconsistent with the public interest.” Id. (emphasis added, internal quotation marks omitted). Read in context as part of a discussion of the adequacy of Novelty’s controls against diversion, this statement amounts to a finding that the company’s use of the self-storage facilities posed risks of diversion sufficient to show that Novelty failed to maintain effective diversion controls. See id. at 52,700 (finding that this factor supports revocation). And as Judge Henderson explains, the Deputy Administrator adequately addressed contrary evidence in making this finding. See Op. at 1181-82.
Second, and just as important, when turning to the choice of sanction, the Deputy Administrator stated that Novelty’s *1169 failure to enforce its own diversion control policies “provides reason alone to conclude that it cannot be trusted to adhere to compliance conditions,” Final Order, 73 Fed.Reg. at 52,704 (emphasis added) — the only lesser sanction under consideration. Substantial evidence supports this conclusion. The Deputy Administrator found that on 85 occasions during a six-month period, Novelty violated its policy limiting customers to one case per sales cycle. Id. at 52,703. Novelty insists the policy applied only to certain packages and was thus violated just 35 to 45 times in a one-year period. Petr.’s Reply Br. 19. But the Deputy Administrator credited testimony establishing that the policy applied to a wider range of packages and thus that Novelty in fact committed 85 violations, Hr’g Tr. at 624. Contrary to the dissent, the Deputy Administrator had no obligation to consider how many completed transactions were made during that six-month period, see Dissenting Op. at 1197, because many of the completed transactions may have been ones in which the customer only demanded one case, and thus would hardly count as instances of successful enforcement of the one-case limit. The Deputy Administrator was also skeptical of Novelty’s failure to issue warnings to its sales force until after DEA’s administrative inspection warrant, permissibly discrediting testimony that this delay stemmed from a computer glitch. Final Order, 73 Fed.Reg. at 52,703; see also Hr’g Tr. at 1435.
The Deputy Administrator made several additional points that support her finding that Novelty failed to enforce its own policies. She observed that the record contained no evidence that Novelty ever completely cut off any of the stores that violated the one-case policy (as the company’s CEO promised he would). Final Order, 73 Fed.Reg. at 52,703; see also Hr’g Tr. at 159. She also pointed out that Novelty sold extremely high quantities of list I products to one store even after the company itself became concerned that the store was making excessive purchases, inferring from this that Novelty’s “policy of monitoring unusual sales activity and cutting off sales if such purchases continue is a sham and not a legitimate effort to control diversion.” Final Order, 73 Fed.Reg. at 52,703-04 (internal quotation marks and citation omitted). This inference is perfectly rational, though I hasten to add that I wouldn’t necessarily agree with the Deputy Administrator’s more general treatment of high sales volumes as prima facie evidence of diversion. It’s one thing to infer, as the Deputy Administrator did here, id., that Novelty’s high volume of sales to a store that it had previously found made excessive purchases indicates that Novelty isn’t serious about its policy of monitoring suspicious transactions. It’s quite another to infer, as the Deputy Administrator did elsewhere, id. at 52,700, that similarly high volumes of sales made to stores never suspected of suspicious activity signal a high risk of diversion. But only the former, more sensible inference is necessary to the sanction imposed.
According to the Deputy Administrator, her finding that Novelty failed to enforce its own policies provided “reason alone” to reject sanctions short of revocation. Id. at 52,704. The dissent believes that the Deputy Administrator couldn’t have meant what she said given that she spent much of her opinion enumerating additional factors favoring revocation. Dissenting Op. at 1198 n.10. But agencies often enumerate multiple grounds for their actions, even when one or more of the grounds would be adequate standing alone. By referring to this finding as “reason alone” to reject lesser sanctions, the Deputy Administrator clearly did so here.
Together, these two findings — that Novelty’s use of self-storage units rendered its *1170 delivery system unsecure and that its disregard of its own policies required revocation — provided an independent basis for the Deputy Administrator’s action. I thus have no need to address Novelty’s objections to (1) the Deputy Administrator’s treatment of high sales volumes as prima facie evidence of diversion, (2) its finding that Novelty attempted to circumvent the order suspending it from distributing list I chemicals, or (3) its condemnation of Novelty’s use of the self-storage units while challenging the Raber letter. Although I am somewhat troubled by the first two, none of these challenges could possibly affect the outcome of this petition for review given the Deputy Administrator’s reliance on independent and sufficient grounds for revocation. See PDK Labs., 362 F.3d at 799 (“If the agency’s mistake did not affect the outcome, if it did not prejudice the petitioner, it would be senseless to vacate and remand for reconsideration.”).
I agree with Judge Henderson that Novelty’s other objections to the Deputy Administrator’s decision are without merit. The Deputy Administrator correctly concluded that even if DEA agents violated the First Amendment during their inspection of Novelty’s warehouse, the exclusionary rule is inapplicable to administrative proceedings of the kind at issue here. See Pa. Bd. of Prob. & Parole v. Scott, 524 U.S. 357, 363, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998) (“[W]e have repeatedly declined to extend the exclusionary rule to proceedings other than criminal trials.”). Novelty complains that the Deputy Administrator failed to articulate the level of tolerable risk, but the Raber letter gave perfectly adequate guidance. Finally, neither Novelty’s complaint that the Deputy Administrator conducted a biased campaign of enforcement against independent distributors of list I chemicals nor its complaint of unconstitutional prejudgment bias finds support in the record. Especially given the Deputy Administrator’s rejection of much of the government’s evidence, my concerns with her reasoning fall short of the level at which “a disinterested observer may conclude that [the Deputy Administrator] has in some measure adjudged the facts as well as the law of a particular case in advance of hearing it,” Cinderella Career & Finishing Sch., Inc. v. FTC, 425 F.2d 583, 591 (D.C.Cir.1970) (internal quotation marks omitted).